Please stand by. Good morning guards My name is William Perry, along with Garry Schubert, and I'm here representing the clients Fujianologic and Pacific Coast. We believe this is a case of pure statutory construction. Statutory construction that was not done by either the agency or the court below. I therefore, before I start the argument, I'd like to quote the words of the statute itself. 167733E states... What does it mean by indirectly owning? Well, indirectly... Remember, the point I'm trying to make here, it's not indirectly, directly, or indirectly owning. It's controlling, or holding, the shares with the power growth. And there's absolutely no question... Indirectly owning, though, is a very broad concept. Well, holding... Stock ownership... Stock ownership, it could be anything. It could be because of your ability. You know, when you put together a joint venture, some of it can be capital, some of it can be muscles, some of it can be an idea. An inventor may have an invention and may have no money at all. But what Congress has said here is they've got to put in cash or merchandise during the period of review. But they also say in their regulations that debt financing works, doesn't it? Right, and there's also a case... Why wasn't this debt financing? Debt financing... Viewed in one way, yeah, I mean, it was... Debt financing, yeah. But I think the other point, if we cited a case in a reply brief called Petroleum Wax Candles, where it said non-monetary consideration is okay to be the part that creates the joint venture. We put it in page 3 of the reply brief. But I think the other point here is, you know, again, we've got to go... What I think is the bigger issue here is does the Commerce Department have the right to graft additional language into the statute? The statute here is crystal clear. And I went back to check out Chevron and say... And in that case, the issue was the Clean Air Act before Justice Stevens and the Supreme Court. And the issue was what is the definition of a stationary source? And Justice Stevens said, first always is the question of whether Congress has directly spoken on the precise question and issue. If the intent of Congress is clear, that is the end of the matter. This is mandatory language. It's not... The Congress Department mentions burden, that there's got to be a burden on us to create the record. And they cite a case called Fujitsu. But Fujitsu stands for the proposition of a startup adjustment, which is a calculation to increase the normal value in a dumping case. Yeah, that is discretionary. Commerce can give it or not give it. But this language is mandatory. They shall be considered affiliated. That's very different than a burden... There's no burden on the Pacific Coast here or Fujita Logic. If Fujita Logic owns more than 5% of the shares with the power to vote, end of the matter. Now, one of the questions that they've raised is they're saying, oh, the Washington State law doesn't trust the anti-dumping law. But that's not the issue here. The issue is, did Fujita Logic in the state where the corporation is located, Washington State, have the power to vote the shares during the review period? And the answer is, yeah, they did. That's the elephant in the room. No matter what the Commerce Department says as to whether it was paid in merchandise or cash during the review period, they held the shares and they had the power to vote them. It's pretty clear. It's that simple. Well, you also qualify under the 5% or more outstanding voting stock, don't you? We have to stop. Yes, the stock certificates. The promissory note was consideration for the stock certificates, the stock certificates on the record. Even the Justice Department and the Commerce Department means they're not questioning... Compensated in cash or merchandise for those shares. Right, but they were... the promissory note said that the payment had to be done after the period of investigation in 2001. So the promissory note was entered into in August of 1999 before the start of the review period, and the payment didn't have to be made until 2001. But under Washington State law, the promissory note, the point you made, debt financing, is what was the consideration for the shares. It's kind of like cut crime. And I think the only point here is that, again I go back to the question, Commerce appears to almost be grafting language into the statute. By saying, now we've got a new requirement here, but it's not there in the statutory language. And that's the problem we have. Thank you very much. Thank you, Mr. Perry. We'll preserve the rest of your time if you need to use it. Thank you, Your Honor. Are you going to tell me I don't own my house? I'm debt financed. Certainly not. I don't own it. I would not make that assertion at all, Your Honor. This is the antediluvian duty law. Commerce made a determination that Foujian Cologic and Pacific Coast were not affiliated for the purposes of the antediluvian duty law. But they own 10% of their stock. That sounds like a pretty significant affiliation. In fact, the statute says 5% is enough, but they've got 10%. They were the holder. There is evidence on the record that they were the holder of 100,000 shares of this property, Your Honor. However, the assertion by Foujian in the administrative review… They can vote those stock shares, can't they? I don't know that, Your Honor. Well, the record indicates that they can vote those stock shares. Why? They hold the stock shares. What is the problem with commerce in acknowledging these things? I'm not sure that the actual stock certificate doesn't state that they can vote. I don't think commerce ever disputed that they could vote those shares. The problem was, though, that Foujian asserted that it paid in capital during the period of review in compensation for these shares. But, counsel, why isn't this case over? You just told us they held 10% of the shares and no one disputed that they could vote them. And the statute, regardless… Then we don't even need to address the issue whether they, quote, owned them, because the statute said owning, comma, controlling, comma, or holding with power to vote. You acknowledge they held 10%? You acknowledge commerce didn't dispute they had the voting power? That's the end of the case. Maybe I misspoke. There was no assertion of voting power made to commerce that I'm aware of. That simply wasn't addressed on the record. But they got the stock. Yes, Your Honor. And there's nothing on the record, as my colleague has pointed out, that indicates in any way that they can't vote stock they hold. That's correct, Your Honor. I don't know. I think my colleague has just nailed right on the head. I would just like to address a few points made by the appellant in this case. Specifically, the debt financing aspect of it. The regulation specifically says that in the case of debt financing, commerce will not find control unless it finds that the impact of the decisions that the holder of the debt can impact decisions considering the production, pricing, and cost of the subject merchandise. There was never that argument made below, and therefore commerce did not make that determination that they could, that they held that financing with the ability to impact decisions. In fact, commerce made the contrary finding that there was no demonstration of control by Fujian on the Pacific Coast. Well, the record shows clearly that they did put out during the period of review over $49,000 in merchandise in payment for this stock right off the bat. And if you compute it in one way, that's over 5%, as the record shows. Depending upon how you change the denominator, it could become 5% or 4%. The record shows that Pacific Coast, the party over which Fujian is asserting control, sold that amount of merchandise to a seafood broker. The record does not demonstrate that Fujian transferred that $49,000 in change of merchandise to Pacific Coast. Therefore, commerce made a determination that there was no connection between, or there was no demonstration on the record. There was a memorandum of understanding that Fujian would not charge Pacific Coast for that. There was a memorandum of understanding. It sounds to me like somewhere along the line, Fujian gave Pacific Coast over $49,000 worth of merchandise. There was a memorandum of understanding that said, the merchandise will be transferred, that's yours. $49,000, set it off against our debt for the 10% stock. Isn't that what it says? Yes, sir. Commerce requested documentation connecting that merchandise that Pacific Coast sold to a seafood broker to Fujian. The respondents did not provide such evidence. Even if we agreed with you and with commerce that the things weren't sufficiently connected by the facts, would it matter because that's outside the period of the review? During the period of the review, there was a promissory note in effect. Isn't that promissory note alone sufficient consideration? Commerce determined that it was not sufficient consideration because the assertion here was made that that promissory note was paid during the administrative review. They asserted that the merchandise was transferred during the administrative review. Commerce requested documentation proving the transfer from Fujian to Pacific Coast. That documentation was not provided. Thus, because the par value of the shares during the administrative review had not yet been reduced, and the assertion was made that that transfer was made at that time, the par value would not quite equal, it would certainly not equal 10%, and commerce determined that it did not equal 5%. Finally, Fujian is not entitled to a remand in this case to supplement the administrative record. As we stated in our brief, we have waived the argument that they are entitled to a remand. They respond that, well, there's no need to exhaust administrative remedies here. However, we did not make an exhaustion argument. We simply said, citing this court's holding wrong, that it is well settled that a respondent bears the burden of creating an adequate record, and if they fail to raise an argument in the trial of the court, they have waived it. For these reasons, we ask that you confirm the decision of the Trial Court Court. Thank you, Mr. Silverbrand. Mr. Harris? I have just short of 10 minutes, if you need to use it. Was there any evidence in the record that you had the power to vote the shares? The share certificate says that the 100,000 shares are there. They assumed that they were voting it out. I mean, there were no indications these were not non-voting shares. They definitely have the power to vote, yes. And if you take a look, again, the one problem we have here is that Congress never did the analysis. If you look at the decision memo, it didn't address the promissory note. It didn't go through the statutory analysis. And, in fact, to some extent, the court didn't either. This case got caught up to a lot of other cases involving prohibition, and it was a two-paragraph decision saying Congress is right to act. And I think that's the point. I think the point you have, which is right, own, control, or hold. And they hold the shares, and they can vote them. And the memorandum of—I mean, one of the questions, the point here, you should understand, why the documents were put on the record. In the supplemental questionnaire, the Congress department said, okay, Fujitablogic, Pacific Coast, give us any documents that you have to support your claim that there was a sale of merchandise. So we supplied them. And then Congress issued another supplemental questionnaire about different issues but didn't even address if they had any problems with the documents. And then the preliminary determination became like a game of blind man's bluff or pin the tail on the donkey. If you don't get the documents right, we're going to nail you. And that's what they did here. They could have come back in the third supplemental questionnaire and say, hey, you didn't cross all the I's and cross all the T's. Give us these additional documents. We would have provided them, but they didn't. And the statute gives us the right to come back and answer any clarifying questions Congress may have. Thank you very much. Thank you very much, Larry. That's it for today. Have a great day.